# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Ashton Muse | * | |
| 6190 Down Ridge Court | * | |
| Elkridge, MD 21075 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| Howard County Board Of Education | * | |
| 10910 Clarksville Pike | * | |
| Ellicott City, MD 21042 | * | |
| | * | CASE NO.: |
| Serve: | * | |
| General Counsel | * | |
| Mark Blum | * | |
| 10910 Clarksville Pike | * | |
| Ellicott City, MD 21042 | * | |
| | * | |
| & | * | |
| | * | |
| Howard County Public Schools | * | |
| 10910 Clarksville Pike | * | |
| Ellicott City, MD 21042 | * | |
| | * | |
| Serve: | * | |
| General Counsel | * | |
| Mark Blum | * | |
| 10910 Clarksville Pike | * | |
| Ellicott City, MD 21042 | * | |
| | * | |
| & | * | |
| | * | |
| Michael Keith Williams | * | |
| 1924 Millers Mill RD | * | |
| Cooksville, MD 21723 | * | |
| | * | |
| & | * | |
| | * | |
| Napoleon Alexander Saunders | * | |
| 8015 Big Pool RD | * | |
| Laurel, MD 20724 | * | |

1

```
                                        *
&                                       *
                                        *
Clifton Macer                           *
3718 Cranston Ave.                      *
Baltimore, MD 21229                     *
                                        *
&                                       *
                                        *
Lawrence Williams                       *
9112 Sylvan Dell                        *
Randallstown, MD 21133                  *
                                        *
&                                       *
                                        *
Howard County Police Department         *
Serve: Chief of Police Gregory Der      *
3410 Court House Drive                  *
Ellicott City, MD 21043                 *
                                        *
&                                       *
                                        *
Howard County, Maryland                 *
Serve County Executive:                 *
Calvin Ball                             *
3430 Court House Dr.                    *
Ellicott City, MD 21043                 *
                                        *
&                                       *
                                        *
Nicholas Mark Novak                     *
8061 Hillrise Ct.                       *
Elkridge, MD 21075                      *
                                        *
&                                       *
                                        *
Nicole Gosnell                          *
1213 W 41st St.                         *
 Baltimore, MD 21211-1551               *
                                        *
&                                       *
                                        *
And other unnamed employees of the      *
Howard County Board Of Education,
```

Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Ashton Muse("Ashton"), by and through undersigned counsel, brings this Complaint against the Defendants for violations of his constitutional and statutory rights under federal law and respectfully alleges as follows:

## PARTIES

1. Plaintiff Ashton Muse was always a minor and a student at Howard High School, relevant to this Complaint. He suffers from documented disabilities and was eligible for services under the Individuals with Disabilities Education Act (IDEA) and the Americans with Disabilities Act (ADA).

2. At the time of the incident, Plaintiff was a minor.

3. He now brings this Complaint against Defendants as an adult. Plaintiff's date of birth is May 28, 2004.

4. Md. Code, Courts and Judicial Proceedings Section 5-101 provides in pertinent part that the statute of limitations is tolled until the minor reaches the age of majority.

5. Defendant Howard County Board of Education (HCPSS) is the governing body of the Howard County Public School System, responsible for the management, operation, and control of public schools in Howard County, Maryland.

6. Defendant Howard County, Maryland (HCM) is responsible for the management, operation, and control of the Howard County Police Department.

7. Defendant, Howard County Police Department(HCPD), is responsible for the management, control, training, and operation of School Resource Officers assigned to HCPSS.

8. Defendant Michael Williams (MW) was employed by HCPSS as a security assistant at Howard High School at all relevant times.

9. Defendant Napoleon Saunders II ( Saunders) was employed by HCPSS as a staff member at Howard High School at all relevant times.

10. Defendant Clifton Macer (Macer) was a School Resource Officer (SRO) assigned to Howard High School, employed by the Howard County Police Department, at all relevant times.

11. Defendant Lawrence Williams (LW) was employed by HCPSS as a Student Conduct and Engagement Officer at Howard High School at all relevant times.

12. Defendant Nicholas Novak (Novak) was the Principal of Howard High School at all relevant times.

13. Novak was the direct supervisor of Defendant Michael Williams and was responsible for overseeing security protocols and educational protocols at Howard High School at all relevant times.

4

14. Novak at all relevant times was an employee of HCPSS.

15. Defendants Novak, LW, Macer, Saunders, and MW may at times throughout this complaint be referred collectively as "Individual Defendants."

16. Defendant, Nicole Gosnell, was the school psychiatrist, employed by HCPSS at all relevant times.

## JURISDICTION AND VENUE

17 . Jurisdiction is proper under 28 U.S.C. § 1331 (federal question);28 U.S.C. §1343 (civil rights violation);42 U.S.C. § 1983 (constitutional claims);42 U.S.C. § 12101 et seq. (ADA);29 U.S.C. § 794 (Rehabilitation Act);20 U.S.C. § 1400 et seq. (IDEA)And 28 U.S.C. § 1367 (supplemental jurisdiction over state tort claims).

18. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the acts occurred in Howard County, Maryland.

19. According to MD Annotated Code, Courts & Judicial Proceedings §5-304, notice of claim was served upon Howard County, Maryland, and the Howard County Police Department on March 15, 2022, and on the Howard County Board of Education on March 14, 2022.

## FACTUAL BACKGROUND

20. This case involves student safety, specifically the significant injuries suffered by Ashton due to various defendants' actions, inactions, and Constitutional violations.

21. Plaintiff seeks a monetary, not educational, remedy for the harm suffered by Plaintiff because of Defendants' actions, inactions, and Constitutional violations.

22. Ashton was diagnosed with intellectual and behavioral disabilities and was disabled according to all relevant Federal, State of Maryland, and Local Ordinances.

23. Specifically, Plaintiff was diagnosed with multiple conditions, including a specific learning disorder with impairment in reading, and other neurological disabilities.

24. Plaintiff was found to be eligible for special education services, and HCPSS developed and implemented an Individualized Education Program ("IEP") for Plaintiff during his freshman year of 2018.

25. HCPSS continued to provide Plaintiff with an IEP based on his academic and emotional evaluations throughout his sophomore year (2019) and junior year (2020).

26. HCPSS uses the following description on its official website regarding "Special Education," which encompasses the IEP Program:

> "We support the rights of all students to receive a free, appropriate public education in the least restrictive environment to meet their individual needs. Our goal is to prepare them to participate in and serve their community with dignity and pride. HCPSS staff work to ensure that high-quality special education services are delivered consistently and collaboratively. Our leaders develop transparent, open, and accessible communication to ensure that parents, guardians,

and community members trust in the integrity of the school system and are active and valued partners."

27. HCPSS uses the following description on its official website regarding "High School Academic Life Skills:

> "Based on student needs outlined in the Individualized Education Program (IEP), students receive instruction in self-contained and/or general education classes, with access to the general education curriculum and extracurricular school activities as appropriate. Students are referred to the Academic Life Skills Programs through the school IEP team process, which includes parents and representatives from the Department of Special Education and potentially receiving schools."

> "Preparation for post-high school transition is an integral part of each program. A transition plan is developed to meet each student's unique needs as they prepare to exit high school and may include in-school work experience, work enclave, and work study, as appropriate. Students participate in a combination of a typical high school experience along with transition services."

*2021 School Year*

28. During the commencement of his senior year in October 2021 at Howard High School, located in Ellicott City, MD, HCPSS, through Howard High School, provided Plaintiff with another IEP based on his assessment results and neurological evaluations in-line with previous academic years.

29. The 2021 IEP marked the fourth consecutive academic year Plaintiff received an Individualized Education Program from his school.

30. Howard High School ignored Plaintiff's diagnosed neurological disabilities, which are well documented in the HCPSS' records.

31. These disabilities are characterized by difficulty managing emotions and impulses, challenges in planning and organizing tasks, and inappropriate social behavior stemming from neurological deficits.

32. A neurological study in the school's records detailed Plaintiff's "notable difficulties with executive functions."

33. The school failed to reasonably consider this evidence, despite its direct relevance to Plaintiff's behavior on the date of the incident.

34. Staffing at HCPSS is done at a school level, not county-wide.

35. MW's actions in an incident involving Dylan Perez on February 12, 2015, were disturbingly like his behavior towards the Plaintiff.

36. Despite this incident in his work history, HCPSS retained MW as an employee and failed to provide the necessary training to address his behavior.

37. Mr. Cliff Macer's documented conduct as a Baltimore City Police Officer was disturbingly similar to his aggressive behavior towards the Plaintiff.

38. Despite this alarming fact,  HCPD, HCPSS, and HCM chose to retain Macer as an employee and failed to provide the necessary training to address his behavior.

39. HCPSS, HCPD and HCM knew, or should have known, that inexperienced or untrained school staff could endanger special-needs students such as Plaintiff.

**FACTUAL ALLEGATIONS**

40. On or about December 2, 2021, Plaintiff Ashton Muse, a 12th-grade student at Howard High School, was involved in an altercation with three other students in the school cafeteria.

41. The altercation was the culmination of bullying and teasing targeted at Mr. Muse throughout the day by several students because of his learning disabilities and psychological and emotional characteristics.

42. Students continued to agitate and instigate Plaintiff through persistent bullying witnessed by other students, cafeteria staff, and other school personnel.

43. Individual Defendants and others failed to intervene on Plaintiff's behalf and protect him from being verbally and emotionally taunted by the students.

44. After the altercation between Ashton and the students, Defendant Michael Williams, a security assistant employed by HCPSS, aggressively tackled Ashton to the ground, and maliciously and repeatedly punched Plaintiff in the face and back of the head.



45. While Ashton was restrained by Defendant Michael Williams, Cliff Macer and Napoleon Saunders restrained Plaintiff face-down on the cafeteria floor amid onlooking students and school personnel.

46. Defendants Saunders and Macer contributed to Ashton's restraint by kneeling on his back and legs, causing further physical injury and emotional trauma.

47. Video evidence and witness testimony demonstrate that Ashton did not resist and that the force used against him was excessive and harmful.

48. Plaintiff sustained multiple physical injuries, including a concussion and supraorbital hematoma, among other injuries; however, no medical attention was provided by school staff after the incident.

49. Ashton's parents were not notified of the assault by school officials or the police after the incident.

50. Ashton's parents only learned of the incident through a third party who had seen viral video footage of the assault.

51. After being assaulted by MW, Saunders, and Macer, Ashton was taken into police custody; however, he did not receive medical attention from Howard High School.

52. The only medical attention Ashton received was an EMT evaluation while in police custody before being released to his parents, who later sought medical treatment on their own accord.

53. The excessive use of force employed by Defendants violated Ashton's constitutional rights, including those protected by the Fourth and Fourteenth Amendments to the U.S. Constitution and Articles 24 and 26 of the Maryland Declaration of Rights, among other provisions.

54. Five days after the incident, on December 7, 2021, Howard High School convened a "Manifestation Determination" meeting allegedly to discuss the altercation between Ashton and the other students on December 2, 2021.

55. "Manifestation Meetings" are established to determine if a student's behavior resulted from their documented disability.

56. In this case, the Manifestation Meeting was supposed to be convened to determine if Ashton's conduct in the altercation with his fellow students was a result of his documented disabilities.

57. Manifestation meetings have specific statutory requirements to ensure that students and parents receive due process and fairness during these meetings.

58. An element of the due process afforded to the student is to properly inform the student and parents of the nature, extent, time, and location of the Manifestation meeting.

59. However, Howard High School failed to provide Ashton and his parents with the legally required "Prior Written Notice," in violation of federal and state regulations governing special education procedures.

60. Ashton and his parents were not provided with any documentation explaining the meeting's purpose, scope, or procedures.

61. Despite attending the meeting in person at the insistence of Mr. Novak, the meeting lacked critical procedural compliance, and decisions were made without adherence to the mandated legal requirements.

62. During the Manifestation Meeting, Defendant Nicole Gosnell was present and failed to provide any input regarding Ashton's disabilities.

63. Defendant Nicole Gosnell's silence undermined the manifestation determination process and should be construed as deliberate indifference.

64. By failing to provide prior notice and the necessary information, HCPSS deprived Ashton and his parents of their legal right to participate meaningfully in the manifestation determination meeting.

65. This lack of opportunity to participate meaningfully undermined the integrity of the process and violated the Individuals with Disabilities Education Act (IDEA).

66. An independent investigation conducted by the Department of Education subsequently found that the Howard County Public School System (HCPSS) violated federal regulations during the December 7, 2021, Manifestation Meeting.

67. Defendants HCPSS, HCPD, and HCM failed to provide adequate training and supervision to its employees, and failed to implement policies to prevent

the excessive use of force; and failed to accommodate Ashton's documented disabilities as required under the ADA and Rehabilitation Act.

68. Ashton's injuries, both physical and emotional, have required extensive medical and psychological treatment.

69. Medical evaluations diagnosed Ashton with head trauma and headaches.

70. A CT scan revealed a small area of scalp swelling and a hematoma in the frontal region.

71. Subsequent assessments confirmed symptoms of head trauma, including physical, cognitive, and emotional effects such as headaches, mental fogginess, irritability, and sadness.

72. Ashton was later diagnosed with a concussion and underwent multiple follow-up evaluations.

73. He experienced persistent symptoms, including sensitivity to noise and fatigue.

74. Additional diagnoses included neurological deficits, a specific learning disorder with impairment in reading, and possible psychosis linked to the head injury.

75. Ashton reported paranoid thoughts.

76. Ashton received short-term crisis services for coping skills and psychological support, with recommendations for long-term counseling.

77. After the incident, HCPSS assigned Ashton to evening school and then transferred him to Long Reach High School, located in Columbia, Maryland, to complete the final semester of his senior year.

78. He was also provided behavioral therapy as a direct and proximate result of his injuries.

79. The purpose of the therapy was to treat the psychological, emotional, and mental distress caused by his injury.

80. Since safety is the top priority for all students with disabilities with an IEP, Defendant HCPSS was required to ensure the safety of Ashton Muse and all similarly situated students.

81. As Individual Defendants lacked experience, training, or education in dealing with students with disabilities, Defendants HCPSS, HCPD, and HCM were required to provide its employees with proper supervision, including discipline, BIP, and IEPs. HCPSS failed to take any of these actions, which substantially increased the risk of harm to Ashton and threatened his safety.

82. At all relevant times, the employees and agents of HCPSS, HCPD and HCM, including Individual Defendants, were acting within the scope of their employment in matters relating to Ashton Muse, which included, but were not limited to, educating and supervising Ashton Muse, properly interacting with Ashton, and ensuring his safety.

83. At all relevant times, Ashton Muse was under the care, custody, and control of Defendant HCPSS, its agents, servants, and employees, including Individual Defendants.

84. HCPSS has a *loco parentis* relationship with its students and, therefore, has a duty to protect them from foreseeable harm.

85. None of the tortious actions or inactions stated above had any educational value or benefit for Ashton. They were also not consistent with best practices or with the training, methods, or techniques used to educate or discipline students like Ashton properly.

86. All these actions or inactions constituted abuse or corporal punishment, which is against state law, state regulations, and local regulations.

87. These actions or inactions substantially increased the risk of harm to Ashton Muse and threatened his safety.

88. Defendants HCPSS, HCPD and HCM provided Individual Defendants professional access to Ashton Muse, which resulted in his harm.

89. These actions or inactions substantially increased the risk of damage to Ashton Muse and threatened his safety.

90. Individual Defendants lacked the training, skills, knowledge, and professional prowess to interact with Ashton Muse properly.

91. These actions or inactions substantially increased the risk of harm to Ashton Muse and threatened his safety.

92. Defendants HCPSS and HCM failed to enact policies or administrative procedures for confirming the experience, qualifications, training, or experience of school staff interacting with disabled students, including those with IEPs, BIPs, 504 Plans, or the like, such as Ashton Muse.

93. All these actions or inactions substantially increased the risk of harm to Ashton Muse and threatened his safety.

94. The failure to enact such policies or administrative procedures directly relates to Ashton Muse's significant head injuries and his subsequent physical, psychological, emotional, and mental injuries.


## COUNT I – NEGLIGENCE

### (All Defendants)

95. Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

96. HCPSS, HCPD and HCM owed a duty to parents and students, including Ashton  and his parents, to provide for the safety and care of students when those students are in the custody and control of HCPSS, HCPD and HCM.

97. HCPSS, HCPD and HCM has a special relationship with students and owes students the same duty that parents and guardians owe to the persons under their respective custody and control.

98. HCPSS, HCPD and HCM also have a duty to mitigate unreasonable risk of harm to students, including special needs students such as Ashton.

99. Individual Defendants owed a duty to students and parents, including Ashton Muse, to provide for his safety, care, and well-being.

100.    The Individual Defendants have a special relationship with students and owe students the same duty that parents and guardians owe to the persons under their custody and control.

101.    HCPSS, HCPD, and HCM breached their duty of care to Ashton Muse when their employees and agents engaged in inappropriate, improper, non-constructive, non-educational, and unsafe conduct directed at Ashton Muse.

102.    HCPSS, HCPD and HCM breached the duty of care owed to Ashton Muse. HCPSS, HCPD and HCM placed Individual Defendants in a position of trust and authority and knew or should have known Individual Defendants were likely to harm students without undergoing proper screening for employment and professional training.

103.    Individual Defendants breached the duty of care owed to Ashton Muse when engaging in inappropriate, improper, indifferent and unsafe conduct directed at Ashton Muse.

104.    HCPSS, HCPD, and HCM are responsible for the actions of their employees/agents, and all acts committed by Individual Defendants were committed within the scope of their employment and/or agency.

105.    As a direct and proximate result of the Defendants' actions, Ashton has sustained personal injuries, damages, and irrevocable harm.

WHEREFORE, Plaintiff, Ashton Muse seeks compensatory damages above $75,000.00, costs of suit, and such other and further relief as this Court deems just and proper

## COUNT II – NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

### (HCPSS, HCPD and HCM)

106.    Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth herein.

107.    Defendants HCPSS, HCPD, HCM owed a duty of care to Ashton that was breached.

108.    HCPSS, HCPD, and HCM also have a duty to reduce the likelihood that their officers, employees, and agents pose harm to students such as Ashton.

109.     This duty includes the appropriate hiring, training, and supervision of its staff, including all Individual Defendants, so that students, such as Ashton Muse, are protected from harm and injury.

110.      HCPSS, HCPD and HCM, breached the duty owed to Ashton when they failed to:

    a.  hire Individual Defendants who did not possess sufficient qualifications, temperament, experience, training, education, and background to interact with, care for, keep safe, and supervise Ashton Muse.

    b.  train Individual Defendants on interacting with, caring for, and protecting Ashton Muse, including refraining from using inappropriate and dangerous force directed at Ashton Muse;

    c.  supervise Individual Defendants regarding their interaction with, caring for, and protecting Ashton Muse, including failing to train Individual Defendants regarding their roles and responsibilities to mitigate harm to students and avoiding the excessive and unjustifiable use of force against Ashton Muse; and

111.     As a direct and proximate result of the Defendants' negligence, the Ashton has sustained personal injuries, damages, and irrevocable harm.

112.     HCPSS failed to exercise due diligence in hiring and training Security Officer MW, who was previously involved in a misconduct incident.

113.    HCPSS' failure to properly vet, train, and monitor MW's performance constitutes negligent hiring, resulting in harm to the Plaintiff and a potential violation of the Individuals with Disabilities Education Act (IDEA).

    a.  Security personnel working in an educational setting are expected to have specialized training in de-escalation techniques and sensitivity to students, especially students with disabilities, particularly those with behavioral and emotional impairments.

    b.  The school employed MW without ensuring that he had the requisite training to interact appropriately with students diagnosed with disabilities such as those with neurological deficits and disorders.

    c.  Evidence suggests that MW's conduct during the incident escalated the situation, triggering behaviors in the student directly related to his disabilities.

114.    HCPSS, HCPD, HCM also failed to hire and oversee Macer, a staff member involved in the educational and disciplinary process concerning the student.

115.    By hiring and employing Macer without adequate training or oversight, the school created an unsafe and non-compliant environment for students with disabilities, constituting negligent hiring.

    a.  Defendant  Macer was hired to work in a position that directly engages with students, including those with special education needs.

    b.  HCPSS, HCPD, and HCM did not ensure that Macer possessed the qualifications or training necessary to work effectively and sensitively with students, especially students diagnosed with disabilities such as Ashton.

    c.  Macer lacked sufficient training in: Implementing IEP accommodations and modifications; Recognizing and addressing behaviors related to  Neurological disorders and Deficits; De-escalation techniques specifically tailored to students with emotional and behavioral disabilities.

    d.  During the incident involving Plaintiff Ashton Muse, Macer's failure to appropriately intervene or de-escalate the situation contributed to a disproportionately punitive outcome and was harmful to Ashton.

    e.  Macer's actions reflect a lack of understanding of Ashton's disabilities and a disregard for federal and state laws protecting students with special needs.

116.    Defendant Lawrence Williams' employment history includes documented removals from Randallstown High School and Dunbar High School due to misconduct.

117.    HCPSS's decision to employ him in a supervisory role at Howard High School without full vetting constitutes negligent hiring and retention.

WHEREFORE, Plaintiff seeks compensatory damages above $75,000.00, costs of suit, and such other and further relief as this Court deems just and proper.

## COUNT III – GROSS NEGLIGENCE

### (All Defendants)

118.    Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth herein.

119.    The actions of the Defendants, particularly the excessive use of force, failure to provide immediate medical care, and disregard for the procedures for dealing with a student with documented disabilities, amounted to gross negligence, showing a reckless and wanton disregard for the Ashton's safety and well-being.

120.    As a direct and proximate result of the Defendants' gross negligence, the Ashton suffered severe injuries and irrevocable damages.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000; punitive damages of $1,000,000; jointly and severally against all defendants ;costs of suit and such other and further relief as this Court deems just and proper.

## COUNT IV – BATTERY

### (Michael Williams, Napoleon Saunders, Cliff Macer)

121.     Plaintiff incorporates by reference and re-alleges the allegations contained in the preceding paragraphs, as if fully set forth herein.

122.     Defendant Michael Williams, with the assistance of Defendants Saunders and Macer, intentionally and unlawfully used excessive force on Ashton, striking him multiple times in the head and back while they restrained him.

123.     MW, Saunders, and Macer's actions were deliberately and with ill will and malice.

124.     The physical contact was harmful and offensive, and Ashton did not consent to such contact.

125.     Ashton Muse did not consent, and due to his age and mental condition, he could not consent to their actions.

126.     Ashton Muse's parents did not consent to MW, Saunders, and Macer's actions.

127.     As a result, Ashton sustained significant physical injuries and emotional trauma.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000; punitive damages of $1,000,000; jointly and severally against all defendants

;costs of suit and such other and further relief as this Court deems just and proper.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

128.    Plaintiff incorporates by reference and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

129.    Mr. Lawrence Williams intentionally pressured the Muse family to transfer Ashton from Howard High School, placing emotional stress on the student and his family.

130.    This coercion, following the December incident, was retaliatory and contributed to Ashton's trauma.

131.    Defendants engaged in extreme and outrageous conduct by using excessive force against Ashton and failing to provide appropriate medical care.

132.    The conduct of Defendants was intentional or reckless, and in deliberate disregard of a high probability that emotional distress would result to Ashton.

133.    The conduct of Defendants was extreme, outrageous, and beyond the bounds of societal decency and professionalism.

134.    The conduct of Defendants was malicious, willful, and intentional.

135.     As a direct and proximate result of the wrongful conduct and intentional infliction of emotional distress by Defendant HCPSS, HCPD, HCM, MW, Saunders, Macer, LW and their agents and employees, Ashton has sustained a severely disabling emotional response.

WHEREFORE, Plaintiff seeks compensatory damages above $75,000; punitive damages of $1,000,000; jointly and severally against all defendants; costs of suit and such other and further relief as this Court deems just and proper.

## COUNT VI – VIOLATION OF 42 U.S.C. § 1983 (FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

### (All Defendants)

136.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

137.     Defendants, their agents, servants, and employees (a)(i) acted or (ii) engaged in activities, or (b) failed to act in violation of Ashton's clearly established rights secured and protected under 42 U.S.C. § 1983, including, but not limited to, the Fourth and Fourteenth Amendments to the United States Constitution, as well as the Maryland Declaration of Rights, the Constitution of the State of Maryland, the laws and regulations of Maryland and the applicable County Charter and/or Code.

138.     42 U.S.C. §  1983 states,

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.."

139.     The Fourth Amendment of the Constitution states,

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

140.     Furthermore, the Fourteenth Amendment to the United States Constitution states:

"All persons born or naturalized in the United States and subject to its jurisdiction are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

141.     Ashton has a protected property interest in the rights, liberties, and privileges described above.

142.     The Defendants, their agents, and their employees deprived Ashton of numerous protected property interests when Defendants used excessive force to seize Ashton unreasonably, as described above, without probable cause, legal excuse, or justification or a valid arrest warrant.

143.     The Defendants, their agents, servants, and employees denied the Ashton less process than was due under the law in depriving the Ashton of the rights in question.

144.    The individual Defendants, their agents, servants, and employees acted under color of law at all relevant times in a manner that was not objectively reasonable.

145.    Ashton further alleges that all of his injuries, losses, and damages—past, present, and prospective—resulted solely from the conduct, actions, and inactions of the Defendants, their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Ashton, either directly or indirectly.

146.    Defendants, their agents, servants, and employees adopted a policy, pattern, or practice of action or inaction that facilitated the violation of Ashton's rights.

147.    Defendants tacitly approved and displayed deliberate indifference toward this unconstitutional conduct, reflecting an official policy of inaction.

148.    HCPSS officials, including Lawrence Williams, violated parental due process rights by denying appeal procedures, withholding documentation, and failing to notify Ashton and his parents of disciplinary actions in a timely manner.

149.    As a direct and proximate result of these acts by Defendants, their agents, servants, and employees, Ashton has sustained legally recognized damages, injuries, losses, and harms.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000; punitive damages of $1,000,000; jointly and severally against all defendants ;costs of suit and such other and further relief as this Court deems just and proper.

## COUNT VII – VIOLATION OF 42 U.S.C. § 1983 (FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

### (All Defendants)

150.    Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

151.    Defendant(s), its/their agents, servants, and employees (a) acted or (b) engaged in activities or (c) failed to act in violation of Ashton's clearly established rights secured and protected under 42 U.S.C. § 1983, including, but not limited to, the Fourth and Fourteenth Amendments to the United States Constitution, as well as the Maryland Declaration of Rights and the Constitution of Maryland, the Laws of Maryland, the Regulations of Maryland, and the applicable County Charter and/or Code.

152.    42 U.S.C. §  1983 states,

 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

153.    The Fourteenth Amendment to the United States Constitution applies

to the Defendants as state actors.

154.    Furthermore, the Fourteenth Amendment to the United States
Constitution states:

> "All persons born or naturalized in the United States and
> subject to the jurisdiction thereof, are citizens of the United States and
> of the State wherein they reside. No State shall make or enforce any
> law which shall abridge the privileges or immunities of citizens of the
> United States; nor shall any State deprive any person of life, liberty, or
> property, without due process of law; nor deny to any person within its
> jurisdiction the equal protection of the laws."

155.    This cause of action seeks to redress the deprivation, under the color of

statute, ordinance, regulation, policy, custom, practice, or usage, of rights,

privileges, and immunities secured to Ashton by the following: the United

States Constitution, Federal law, the Maryland Declaration of Rights, the

Constitution of Maryland, the Laws of Maryland, the Regulations of

Maryland, and any local law or ordinance.

156.    The deprivation was of a clearly established right.

157.    Ashton possesses a protected property interest in the rights, liberties,

and privileges described above.

158.    The Defendants, their agents, and their employees deprived  Ashton of

numerous protected property interests when they abused Ashton as described

above without probable cause, legal excuse, or justification, and/or a valid

arrest warrant, and with excessive force.

159.     The Defendants, their agents, servants, and employees deprived Ashton of the rights in question by giving Ashton less process than was due under the law.

160.     At all times relevant to this matter, Defendants, their agents, servants, and employees acted with deliberate indifference to Ashton's rights, with intent to harm, and/or in a manner that shocks the conscience, was deliberate, brutal, inspired by sadism, and inhumanely disproportionate to any need—in fact, no need existed in this case.

161.     The Defendants, their agents, servants, and employees did not afford Ashton equal protection under the law when they deprived Ashton of the rights in question.

162.     Ashton was a member of a suspect class and was unlawfully discriminated against because of Ashton's disability.

163.     Ashton was similarly situated in all relevant aspects to all other students at the School.

164.     Nonetheless, Ashton was treated differently, as described above, because of his membership in a suspect class.

165.     The Individual Defendants, HCPSS, HCPD, HCM, their agents, servants, and employees, at all times relevant to this matter, acted under color of law and in a manner that was not objectively reasonable.

166.    Ashton further alleges that all of Ashton's injuries, losses, and damages—past, present, and prospective—were caused solely by the conduct, actions, and inactions of the Defendants, their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Ashton.

167.    Defendants, their agents, servants, and employees adopted a policy, pattern, or practice of action or inaction that facilitated the violation of Ashton's rights.

168.    Defendants, their agents, servants, and employees tacitly approved and displayed deliberate indifference toward this unconstitutional conduct, reflecting what amounted to an official policy of inaction.

169.    As a direct and proximate result of these acts by Defendants, their agents, servants, and employees, Ashton has sustained legally recognized damages, injuries, losses, and harms.

WHEREFORE, Plaintiff seeks compensatory damages of more than $75,000; punitive damages of $1,000,000; jointly and severally against all defendants' costs of suit and such other and further relief as this Court deems just and proper.

## COUNT VIII – VIOLATION OF RIGHTS SECURED UNDER 42 U.S.C. § 1983

## (EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES

## CONSTITUTION)

## (All Defendants)

170.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

171.     Defendants, their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Ashton's rights secured and protected under 42 U.S.C.A. § 1983, including, but not limited to, the Fourth and Fourteenth Amendments to the United States Constitution, as well as the Maryland Declaration of Rights and the Constitution of Maryland, the Laws of Maryland, the Regulations of Maryland, and the applicable County Charter and/or Code.

172.     42 U.S.C.A. §1983 states,

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

173.    The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

174.    The Fourteenth Amendment to the Constitution applies the provisions of the Eighth Amendment to the states, offering protection from state actions.

175.    Furthermore, the Fourteenth Amendment to the Constitution states:

> "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

176.    This cause of action seeks to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice, or usage, of a right, privilege, and immunity secured to Ashton by the following sources: the United States Constitution, Federal law, the Maryland Declaration of Rights, the Maryland Constitution, the Laws of Maryland, the Regulations of Maryland, and any local law or ordinance.

177.    The deprivation was of an established right.

178.    A corporal, cruel, and unusual punishment was allegedly inflicted on Ashton. Corporal punishment, generally defined as physical punishment, is an action that the HCPSS, HCPD, HCM and the State of Maryland may define.

179.    These alleged actions may constitute corporal punishment.

33

180.     As a direct and proximate result of these acts by Defendants, their

agents, servants, and employees, Plaintiff has sustained legally recognized

damages, injuries, losses, and harm.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000;

punitive damages of $1,000,000; jointly and severally against all defendants ;costs

of suit and such other and further relief as this Court deems just and proper.

## COUNT IX – VIOLATION OF THE REHABILITATION ACT

## (29 U.S.C. § 794 ET SEQ.)

## (HCPSS, LW and Novak)

181.     Plaintiff repeats and realleges the preceding paragraphs as if fully set

forth herein.

182.     Under the Rehabilitation Act, 29 U.S.C.A. § 794(a),

"No otherwise qualified individual with a disability in the
United States, as defined in section 705(20) of this title, shall, solely
because of her or his disability, be excluded from the participation in,
be denied the benefits of, or be subjected to discrimination under any
program or activity receiving Federal financial assistance or under any
program or activity conducted by any Executive agency ...."

183.     Ashton is a "qualified individual with a disability."

184.     Pursuant to the Rehabilitation Act, 29 U.S.C.A. § 794(b), Defendants
are a

"program or activity receiving Federal financial assistance or
under any program or activity conducted by any Executive agency" as

> Defendants are "(b)(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government; ... (2)(B) a local educational agency ... or other school system; ... or (4) any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3); any part of which is extended Federal financial assistance."

185.    Ashton is discriminated against, excluded from participation in, denied benefits, and denied full and equal enjoyment of goods, services, facilities, privileges, advantages, accommodations, programs, and activities by the actions and inactions of Defendants based on Ashton's disability.

186.    As a direct and proximate result of these acts by Defendants, their agents, servants, and employees, Ashton has sustained legally recognized damages, injuries, losses, and harm.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000 jointly and severally against all defendants' costs of suit and such other and further relief as this Court deems just and proper.

## COUNT X – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101 ET SEQ., 28 C.F.R. PART 35 ET SEQ. AND 28 C.F.R. PART 36 ET SEQ.)

### (HCPSS, Saunders, Gosnell, LW and Novak)

187.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

188.    Pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C.A. § 12131(1) (A) and (B), Defendants are a "public entity" defined as "any department, agency, special purpose district, or other instrumentality of a State or States or local government".

189.    Pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C.A. § 12131(2), Ashton is a "qualified individual with a disability," defined as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices; the removal of architectural, communication, or transportation barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

190.    Pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

191.     Pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C.A. § 12181(7), Defendants' School offers a "Public accommodation" because the School includes: (B) an "establishment serving food or drink;" (C) a "theater, concert hall, stadium, or convention center, her place of exhibition or entertainment) "an auditorium, convention center, museum, lecture hall, or other place of public gathering;" (G) "a terminal, depot, or other station used for specified public transportation;" (H) "a library, gallery, or other place of public display or collection;" (J) "an elementary, secondary, undergraduate, or postgraduate private school or other place of education;" and (L) "a gymnasium, health spa, bowling alley, or other place of exercise or recreation."

192.     Pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(a),

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation."

193.     Plaintiff, Ashton, was discriminated against, excluded from participation, denied benefits, and denied full and equal enjoyment of goods, services, facilities, privileges, advantages, accommodations, programs, and activities by the actions and inactions of Defendants based on Ashton's disability.

194.    During the manifestation determination meeting, HCPSS ignored the critical role of the school psychiatrist, Defendant Nicole Gosnell.

195.    Her failure to provide input denied Ashton a fair evaluation and proper accommodations, contributing to the discriminatory treatment under ADA.

196.    As a direct and proximate result of these acts by Defendants, their agents, servants, and employees, Ashton has sustained legally recognized damages, injuries, losses, and harm.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000; jointly and severally against all defendants ; costs of suit and such other and further relief as this Court deems just and proper.

## COUNT XI – RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101 ET SEQ.)

### (HCPSS, Saunders and Novak)

197.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

198.    Pursuant to Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203(a),

> "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

199.     Pursuant to Title V of the Americans with Disabilities Act, 42 U.S.C. §

12203(b),

> "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

200.     Ashton engaged in protected activity, as outlined above.

201.     Defendants' actions and/or inactions – including, but not limited to, deliberate indifference, gross negligence, and conscious disregard – constituted adverse action against Ashton.

202.     The adverse action directly resulted from Ashton's engagement in protected activities.

203.     As a direct and proximate result of these acts by Defendants, their agents, servants, and employees, Plaintiff, Ashton Muse, has sustained legally recognized damages, injuries, losses, and harms.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000; jointly and severally against all defendants ;costs of suit and such other and further relief as this Court deems just and proper.

## <u>COUNT XII – RETALIATION UNDER THE REHABILITATION ACT</u>

## <u>(HCPSS, Saunders, LW and Novak)</u>

204.    Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

205.    Ashton engaged in protected activity, as outlined above.

206.    Defendants' actions or inactions—including, but not limited to, deliberate indifference, gross negligence, and conscious disregard—constituted adverse action against Ashton.

207.    The adverse action directly resulted from Ashton's engagement in protected activities.

208.    As a direct and proximate result of these acts by Defendant(s), their agents, servants, and employees, Plaintiff, Ashton Muse, has sustained legally recognized damages, injuries, losses, and harms.

WHEREFORE, Plaintiff seeks compensatory damages over $75,000.00; punitive damages of $1,000,000; jointly and severally against all defendants; costs of suit and such other and further relief as this Court deems just and proper.

## COUNT XIII – BREACH OF FIDUCIARY DUTY

## (All Defendants)

209.     Plaintiff incorporates by reference and realleges the allegations

contained in the preceding paragraphs, as if fully set forth herein.

210.     A fiduciary relationship existed between Ashton and Defendants.

211.     Defendants breached the duty owed by the fiduciary to the beneficiary,

Ashton.

212.     As a direct and proximate result of Defendants' breach of fiduciary

duty, Ashton has sustained personal injuries, harm, and damages.

WHEREFORE, Plaintiff seeks compensatory damages above $75,000; jointly

and severally against all defendants; costs of suit and other and further relief as

this Court deems just and proper.


## COUNT XIV – VIOLATION OF MARYLAND

## DECLARATION OF RIGHTS ARTICLE 24

## (All Defendants)

213.     Plaintiff repeats and re-alleges the preceding paragraphs as if fully set

forth herein.

214.     Article 24 of the Maryland Declaration of Rights guarantees public

school students certain rights, including: (i) bodily integrity; (ii) personal

security; (iii) freedom from abuse; (iv) autonomy over body; (v) self-determination over body; (vi) a protected property interest in their freedom; (vii) the ability to exercise free will and dominion over their person; (viii) freedom from unlawful and unwelcome battery by a government actor; (ix) freedom from deprivation of liberty without due process of law; and (x) equal protection of the laws.

215.    As detailed above, Defendants' actions deprived Ashton Muse of his rights under Article 24 of the Maryland Declaration of Rights.

216.    Defendants also violated Ashton's rights by providing less process than was due under Maryland law, depriving Ashton of numerous protected rights and property interests, acting in an objectively unreasonable manner, and providing unequal protection under the law.

217.    Individual Defendants, HCPSS, HCPD and HCM had notice of the actions or inactions as described above.

218.    Individual Defendants, HCPSS, HCPD, and HCM, adopted a policy, pattern, and/or practice of inaction, such as a lack of staff training, that facilitated the harm to Ashton.

219.    Individual Defendants, HCPSS,  HCPD and HCM tacitly approved the unconstitutional conduct and displayed deliberate indifference, reflecting that the HCPSS's failure to train amounted to an official policy of inaction. In addition, the HCPSS's hiring, failure to train, failure to supervise, and

retention of Individual Defendants resulted in a deprivation of Ashton's rights under the Maryland Declaration of Rights and Constitution.

220.    Furthermore, Defendant HCPSS's, HCPD's and HCM's policy, pattern, or practice of inaction was the moving force behind the actual constitutional deprivation.

221.    As a direct and proximate result of Defendants' actions, Ashton suffered personal injuries.

222.    At all times relevant, Defendants acted with ill-will and malice.

223.    At all times relevant, Individual Defendants were working as agents, employees, or servants of the HCPSS, HCPD and HCM and/or under the color of law.

224.    HCPSS, HCPD and HCM is vicariously liable for Individual Defendants' violations of Ashton's rights under Article 24 of the Maryland Declaration of rights.

225.    As a direct and proximate result of Defendants' actions, Ashton has sustained personal injuries, damages, and harms.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000; punitive damages of $1,000,000; jointly and severally against all defendants ; costs of suit and such other and further relief as this Court deems just and proper.

## COUNT XV – VIOLATION OF MARYLAND

## DECLARATION OF RIGHTS (ARTICLE 26)

## (All Defendants)

226.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

227.     Article 26 of the Maryland Declaration of Rights guarantees freedom from unreasonable searches and seizures, warrants without oath or affirmation, and warrants lacking particularity.

228.     It also addresses loss of liberty and bodily integrity, which may be relevant depending on the specific facts and is subject to court interpretation.

229.     As detailed above, Defendants' actions deprived Ashton Muse of his rights under Article 26 of the Maryland Declaration of Rights, including freedom from unlawful search or seizure, loss of liberty, and the right to bodily integrity.

230.     Defendants HCPSS, HCPD and HCM had noticed the actions and inactions described above.

231.     Defendants HCPSS, HCPD and HCM adopted a policy, pattern, or practice of inaction that harmed Ashton.

232.     Defendant HCPSS, HCPD and HCM tacitly approved the unconstitutional conduct and displayed deliberate indifference.

233.     HCPSS's, HCPD's and HCM's failure to train its staff amounted to an official policy of inaction.

234.     In addition,  HCPSS's, HCPD's and HCM's hiring, failure to train, failure to supervise, and retention of Individual Defendants resulted in a deprivation of Ashton's rights under the Maryland Declaration of Rights and Constitution.

235.     Furthermore, Defendant HCPSS's, HCPD's and HCM's policy, pattern, or practice of inaction was the moving force behind the actual constitutional deprivation.

236.     As a direct and proximate result of Defendants' actions and inaction, Ashton suffered personal injuries.

237.     At all times relevant, Defendants acted with ill will and malice.

238.     At all relevant times, Individual Defendants were working as agents, employees, or servants of the HCPSS, HCPD, and HCM and/or under the color of law.

239.     HCPSS, HCPD, and HCM are vicariously liable for Individual Defendants' violations of Ashton's rights under Article 26 of the Maryland Declaration of Rights.

240.     As a direct and proximate result of Defendants' actions and inactions, Ashton has sustained personal injuries, damages, and harms.

WHEREFORE, Plaintiff seeks compensatory damages in excess of $75,000; punitive damages of $1,000,000; jointly and severally against all defendants; costs of suit and such other and further relief as this Court deems just and proper.

## COUNT XVI – VIOLATION OF MARYLAND CODE,

## STATE GOVERNMENT, §20-901

## (HCPSS, HCM)

241.    Plaintiff repeats and realleges the preceding paragraphs as if fully set

forth herein.

242.    Maryland Code Annotated, State Government, §20-304, states,

> "an owner or operator of a place of public accommodation or an agent or employee of the owner or operator may not refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's race, sex, age, color, creed, national origin, marital status, sexual orientation, gender identity, or disability."

243.    Maryland Code, State Government, §20–301, defines a

> "place of public accommodation" as a "cafeteria, lunchroom, ..., motion picture house, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment, ... a retail establishment that is operated by a public entity and offers goods, services, entertainment, recreation, or transportation, or ... an establishment (1) that is physically located within the premises of any other establishment covered by this subtitle or (2) within the premises of which another establishment covered by this subtitle is physically located and holds itself out as serving patrons of the covered establishment."

244.    Maryland Code Annotated, State Government, §20-901, states that "a

unit, officer, or employee of the State, a county, or a municipal corporation

may not engage in a discriminatory act prohibited by § 20-304, § 20-606, § 20-

705, § 20-706, § 20-707, or § 20-708 of this title."

245.    Maryland Code Annotated, State Government, §20-801, states that

"A person may not: (1) aid, abet, incite, compel, or coerce any person to commit a discriminatory act; (2) attempt, directly or indirectly, alone or in concert with others, to commit a discriminatory act; or (3) obstruct or prevent any person from complying with this title or any order issued under this title."

246.    HCPSS and Howard High School all contain a cafeteria, lunchroom, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment where members of the community, including family members, can congregate and offer services, entertainment, recreation, and transportation.

247.    The cafeteria, theater, sports arena, and stadium all offer goods, namely, food and beverages, for purchase.

248.    Defendants breached all these statutory provisions through the conduct described above.

249.    As a direct and proximate result of Defendants' actions and inactions, Ashton has sustained personal injuries, damages, and harms.

WHEREFORE, Plaintiff seeks compensatory damages above $75,000; jointly and severally against all defendants; costs of suit and other and further relief as this Court deems just and proper.

Respectfully submitted,

The Ingram Firm, LLC


Damani K. Ingram, Esq.
Fed Bar#26320
5457 Twin Knolls Road
Suite 301
Columbia, Maryland 21045
dkingram@ingfirm.com
Phone (410) 992-6603
Fax (410) 992-6671
*Attorneys for Plaintiff*


## JURY DEMAND

The plaintiff demands a trial by jury for each and every allegation contained herein.


Damani K. Ingram